15-5796 Federal Home Loan Mortgage Corporation v. Donald Gilbert Arguments not to exceed 15 minutes per side. The appellees will be sharing time with Mr. Trammell, first with 8 minutes, and Mr. Shenez, second, with 7 minutes. And Ms. Bartholomew, for the appellant, you may proceed. Good morning, Your Honors. I'm Julie Bartholomew, representing Ms. Gilbert, and with court's permission, I'd like to reserve 3 minutes for rebuttal. Ms. Gilbert's estranged husband defied a Chancery Court order to pay the Wells Fargo mortgage on the marital home in which Ms. Gilbert and their two children were residing. Ms. Gilbert, in contact with Wells Fargo, was told that she was pre-qualified based on the income that she reported to them from her employment and child support to get a permanent loan modification. If only she would make a trial payment for the first month, submit documentation that confirmed her income that she had reported to Wells Fargo and that they had determined to be pre-qualifying, followed by two more trial payments. The documents were sent to Ms. Gilbert. She filled them out. She submitted them. They were timely. The documents provided that time was of the essence, and it was very time sensitive, because this was a situation where foreclosure was imminent. Both Ms. Gilbert and Wells Fargo were bound by those time is of the essence provisions, and the documents provided that Wells Fargo was to respond to her submission of documents up to 30 days after they were received. March 1st was the deadline for the documents to be presented, and that's when they were all presented by that date. So that meant Wells Fargo had until the end of the month to let her know, you need to send more documents or, for whatever reason, some justification for denying the loan or telling her you're approved for the loan, subject to your next two payments. In this case, instead of doing that, Wells Fargo waited until all three payments were made. In fact, it was May 18th before they purported to deny her on the basis of not supplying additional documents that they had requested of her. The record shows, and Wells Fargo was unable to produce any letter or any notice informing Ms. Gilbert that her documentation was deficient or informing her what else she needed to submit. They just denied her without having informed her, if that was the case, that her documentation was deficient. She acknowledged that she was told she needed to provide proof of these payments. In the trial period payment contract, it says what you're supposed to provide. Right. Proof of child support. And she didn't provide it. I mean, it's not her fault she didn't get it. I mean, this is the whole tragedy of this case. Well, Judge Sutton, what the court held is that she didn't receive child support after March 1st, and she didn't prove the receipt of child support after March 1st. Our position is that's irrelevant because all of her proof had to be presented by March 1st. She couldn't prove. Just to make sure I'm following, that's the proof she needed to prequalify? No, sir. She was prequalified over the phone with verbal information. She was to submit documentation that showed a court order showing that she was receiving $845 in child support. The court order was not going to show she was getting the money. The court order was going to show she was supposed to get the money, right? No, sir. If you will look at the order she submitted, it dispersed child support to her in that order for that time period before March 1st. So it was the proof both that she received it, the court ordered it, and she was entitled to it in the future. So just out of curiosity, your theory of the case is forget the proof. She really did get all the money. She made all the payments.  I'm not saying forget the proof. I'm saying that the trial court overlooked the proof that she did receive child support before March 1st. I'm just asking you, did he make all the payments he was supposed to make? Mr. Gilbert did not support his wife and children as the court ordered him to. Did he pay before March 1st? Yes, ma'am. That was the money that was dispersed in the court order that Ms. Gilbert provided to Wells Fargo. So the court order says that Mr. Gilbert provided the child support prior to March 1st that was due before March 1st. The court was holding that money. So the court dispersed it to her. Yes. So the crux of this case, which I'm only now understanding, is what was she required to show after March 1st? Because you're saying before March 1st she showed everything she needed to show. Correct. I don't think she needed to show anything after March 1st because that was the deadline to either put up or shut up. Here's the money that I'm receiving and here's the proof that I've received it. When you go make a loan somewhere, you don't have to report to your mortgage company six months later what your income is or whether you received a salary. This wasn't a typical loan situation. It wasn't a typical loan, but it was a loan. It was a modified loan, Judge. And it did not contain any terms that you have to report month after month after month that you're still receiving child support. She was already pre-qualified. She gave them the documents. They didn't give her the loan and had pretextual reasons for denying it and didn't even comply with their own contract by timely denying it. But what's your thought about this jurisdictional point? Well, my thoughts on that are, Your Honor, that an appeal bond is a jurisdictional requirement. I believe the trial court was correct in finding that her jurisdiction was derivative from the state court. And Tennessee law is very clear that when an appeal bond is filed, if it's faulty, the court never acquires jurisdiction. I'm a little skeptical of this whole derivative jurisdiction idea. So here's my way of thinking about it. So I might be misstating the law, but I think I'm close on this. So patent claims are exclusive to federal court. Okay? So hypothetically, someone files a patent claim in state court. I would have normally said, well, yeah, you can remove that. It arises under federal question, and indeed, it's exclusive. Well, if it's exclusive, that means the state court didn't have jurisdiction. I understand. And how bizarre that you can't remove something from state court where it doesn't belong to federal court where it's supposed to be. So I find myself highly skeptical of the whole derivative jurisdiction concept. Well, we were in state court because that's where the case was filed by Freddie Mac. And when they lost in General Sessions' court, it was Freddie Mac who appealed it to the state circuit court with this faulty appeal bond. And if it was faulty, which I contend it was under the law, the circuit court never got any jurisdiction. And that appeal became – I mean that General Sessions' judgment became final under Tennessee law. But doesn't the statute say cases involving Freddie Mac can be brought in federal court? It does say that, and that's what Freddie Mac did several years later. Who has the right to destroy that? I don't understand how any state court or litigant can destroy that federal law, the supremacy clause and all that. I think it makes logical sense, Judge Sutton, that if a case – if the court where the case was pending, which was Tennessee circuit court, did not have jurisdiction, it didn't matter if they removed it or did whatever with it. No jurisdiction ever obtained. Do you want me to go back to the original? I had a question about the jurisdiction, but you answered it, so thank you. Going back to the breach of contract, the judge granted summary dismissal based upon these irrelevant facts about what Ms. Gilbert was able to prove after March 1st. And that's the reason why I say that it should be reversed. There at least are issues of fact about her compliance before March 1st that she should have a jury to determine and should have an opportunity to appear before a jury to prove that she did comply and here are the facts that show that I did and that I was entitled to this loan that Wells Fargo denied me. Now, Wells Fargo has contended that there wasn't even a contract. We weren't obligated to do anything. I find that just almost impossible to swallow because they received money. The whole point of this was they were to receive money and Ms. Gilbert was to get the loan. And they'd already told her she was prequalified. So the fact that Wells Fargo just took the money, sent her a late denial letter based upon an illegitimate reason shows that they really acted in bad faith and this was sort of a scam on the part of Wells Fargo to induce a homeowner to pay money when she's so financially distressed it was very difficult for her to do it. They left her without an answer for a long time and then finally dropped the bomb, well, we're not giving you that loan. So what do you think their illegitimate motive was? I think that the whole setup was to confuse people. Ms. Gilbert, every time she called, she had a different operator. If you look at those transcripts, there's no continuity. That's not an illegitimate reason for denying the loan. Well, the illegitimate reason is I guess they wanted to take the property and get all her equity in it. I mean, it was more profitable to Wells Fargo to foreclose than it was to make this loan. They had a profit basis for that. So at the end of the day, Wells Fargo enriched itself both with the money they got from Ms. Gilbert on the false basis that they were going to give her the modified loan and then they enriched themselves with property that was worth twice what was owed on it. It seems to me there's a lesson here, and that is a child support order that calls for mortgage payments and not child support payments into court. I mean, that is how this all started, and I would say the lesson there is that it's not a good idea. I wish I had been the divorce attorney because I don't believe it would have happened that way. I would have insisted because that is how it got off track originally. Did that allow Mr. Gilbert to escape problems you get when you don't make child support payments? Was that the reason it was structured that way? Because, I mean, there's pretty harsh rules if you don't make child support payments, and I'm not sure they apply the same if you don't pay mortgage. No, sir. It was part of his support obligation that the Chancellor of Court enter it. Instead of paying it to Ms. Gilbert or paying it into court, he was to pay the bills directly. The utilities, I don't know why she did it that way. I understand that. I'm just making the point that there's a lot of state laws out there that if you don't make child support payments, the state can come after you in a pretty big way, I think probably including putting some people in jail. I don't think those laws apply if your obligation is to make mortgage payments, and I'm wondering if that was what he was trying to do. It was the judge's idea to set it up this way. I see. All right. And it was subject to contempt power, but he never got in trouble for it. I got it. That I know. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Brad Trammell with Baker Donaldson, and I represent Wells Fargo and Freddie Mac as a defendant only. I'm here to address issue one in the brief, and my co-counsel from Rubin Lublin, Mr. Channis, is going to address issues two and three because he represents Freddie Mac as a plaintiff only. It's a little odd, but that's the way the case is. What's your answer, if you're able to answer it, about her argument that, listen, the court order showed that everything before March 1 was done. There was something that showed there was an obligation, and the court disbursed the money on March 1, and why wasn't there a binding contract to modify the loan at that point, is what I understand her to be saying. I respectfully disagree with opposing counsel. The order provided that certain payments could be made for the mortgage out of money that had been put into the court for past-due child support. So as of March 1 at that point, Mr. Gilbert had not been making payments. He made something in the past. It was put in the court. We don't know. So on March 1, money was dispersed, and your argument is that it wasn't for ongoing payments of the loan? Is that the point you're making? That is correct, number one, but we have to step back from that, in that back in January of 2010, in a phone call with Wells Fargo, Ms. Gilbert stated, this is January 21, obviously before March 1. The answer was, he's not paying me my child support right now. That is from docket number 44, exhibit 8 at page 4 of the transcript. It's a January 21, 2010 transcript. Again, he's not paying me my child support right now. He had not been paying prior to March 1, so I disagree that she was receiving child support in any form or fashion at the time that she was going through the entire modification process. That's the problem, is from sometime prior to this time in January until at least June when there was a wage assignment, she wasn't receiving child support. The court entered an order that provided for two trial payments of the mortgage that was money that was held in the court. That's March 1 when you said that? That is in the February 4 divorce court order, and those payments, as I understand it, were applied to March 1 and to April 1 trial payments. But that order, the thing that the loan mod requires is that there be proof of full, regular, timely payments, mainly for this kind of situation right here. That order is a one-time shot. It is not full. It is not regular. He is clearly not making timely payments. The fact of the matter of looking at this from Ms. Gilbert's perspective, and you only can look at what happened after that, that's not correct. You've got to look at before that because he never was making the payments. Unfortunately, Mr. Gilbert apparently didn't do a lot of things. He allowed the mortgage to go into default. He didn't make his child support payments. But at the end of the day, to qualify to get this loan mod, she had to prove she had the income. So she's told you all in January that he's not making child support payments. Did you accept these trial payments after that period when you knew he wasn't making regular child support payments? Absolutely. Yes, Your Honor. Well, that looks a little greedy. Your Honor, let me back up. Her payments were for $1,000 a month. Payments had not been made in 10 months, and so they offered her a trial loan mod plan at $700 a month. Right. So she technically already owed $1,000. They're accepting $700. They take three payments, and then she makes no more payments. Do they take those three payments after they find out on January 21 that she doesn't have the child support coming in? That is correct, because she fills out. Why would they do that? She's a risk right at that point. I believe so, too. But she has orally said, I'm getting child support of $800 a month. That's why we have documentation. No, no. She said you told us that on January 21 she admitted to the bank he's not paying. That's right. That's right. And then wouldn't it have been a better business decision to say to her, okay, you could make these three trial payments, but it looks like you're really not going to be able to pull this off if he's not making child support payments. Maybe it's not in your best interest to do this. In hindsight, that might have been the correct thing to do. But she said she made a representation that she had $845 in child support, thinking that at some point Mr. Gilbert's going to make the payments. I would have thought the answer was a little different. The answer was maybe she shouldn't have wanted it, but she still wanted the loan modification. That's correct. I mean, it's true. Looking back on it, had you said in January, we're not doing this anymore. It's not in your interest. It's not in ours. I guess in retrospect she would be better off, but I don't think that's what she would have wanted. She didn't want it, and that's what I was trying to get to, is we're giving her an opportunity to try to prove it. She said, I'm going to get $845 in child support, thinking Mr. Gilbert's going to do it. She submits an application that says $845 in child support, but the problem is there's nothing to prove it. When it comes down to show us that you're receiving full, regular, and timely child support payments, she can't do it because he's not making the payments. All right. My only point is that maybe you should have asked for that kind of proof before you accepted the trial payments. I mean, it's okay. You don't have to respond. I mean, this is just unfortunate all the way around. I agree. And if things had been done in a little better order, maybe it wouldn't have turned out the way it did. She probably would have lost the house anyway, but maybe she wouldn't have lost those free payments that you all then declined to return to her when it happened. That's my point. There's a pot of money there that could have been useful to her that she lost without gaining anything, without gaining anything. Respectfully, Your Honor, that money was owed and more. She owed $1,000, Wells Fargo accepted $700, and she got to remain in the property and continues to remain in the property. After she made that last trial payment in May of 2010, she has continued to remain in the property without making one single payment until she had to file a bond for appeal. So she has gotten quite a benefit out of living in the home without making payments. But the point is when she submitted all the documentation and made her first payment, at that point Wells Fargo looks at her to determine does she have, does she qualify, does she have the appropriate documentation at that point. She provides this court order. It's not sufficient. So that's the problem. So did they notify her at that point in time that it wasn't sufficient? At that point in time, I believe the answer is no, not when they received it initially. They have to have time, obviously, to review the documentation. And, Your Honor, I see that I have two seconds. So how long did it take for them to notify her that she was not providing the proper documentation? There is a call log note of April the 10th where it notes that they called the borrower and informed her that the proof of child support was needed. And eventually it did not come forth. So in May a denial letter was sent. There is disagreement about whether she received it, but we have briefed the issue of that the only requirement is that Your time is up. I'm sorry. I was going to let you know that I had eight minutes and Mr. Channis had seven minutes. I'm sorry. No problem. Good morning, Your Honors, and may it please the Court, Brett Channis on behalf of Freddie Mac with respect to issues two and three regarding subject matter jurisdiction and the striking of the answer and affirmative defenses. We respectfully ask that this Court affirm the decision of the District Court. Your Honors, it was... What do you think of derivative jurisdiction? Pardon? What do you think of derivative jurisdiction? Your Honor, derivative jurisdiction, I too am skeptical of it impacting true subject matter jurisdiction. Now, as you noted, this case was removed by Freddie Mac under its charter, which allows it to remove even as a plaintiff at any point in time before trial. And derivative jurisdiction, according to the Supreme Court's jurisprudence and this Court's jurisprudence, is a procedural problem with removal and is not a substantive issue going to a federal court's true subject matter jurisdiction. Now, derivative jurisdiction, as was noted in Ms. Gilbert's argument, is that if a state court has no subject matter jurisdiction, the federal court acquires none on removal. But in Grubbs v. General Electric Credit Corporation in 1972, the Supreme Court found that a defect in derivative jurisdiction is irrelevant if after removal a case is tried on its merits and the federal court enters judgment. Once a case is on appeal, a party can't complain about subject matter jurisdiction. Now, this Court, in one of its earlier applications of Grubbs in 1989 in Morta v. Klein, found that it could retain jurisdiction even after finding that the state court lacked subject matter jurisdiction. That was similar to the patent issue that you brought up, Judge Sutton, with a case in Morta. It was a RICO claim that at that point in time had exclusive jurisdiction in federal courts, and the court found that even though the state court lacked subject matter jurisdiction, the federal court had its own original jurisdiction and could rely upon that. What's the state of the law? Is the state of the law that derivative jurisdiction is nonsense? Is the state of the law that it should be called something other than derivative jurisdiction because that's misleading? What's the right state of the law? Well, so there's two points there, Your Honor. The first is that the state of the law is that the word jurisdiction is sort of a misnomer in that. The Seventh Circuit in 2011 in Rodas v. Seidlin undertook probably the most extensive analysis of derivative jurisdiction to date and came to the conclusion that, one, it's not a true jurisdictional doctrine, that they need to stop using the word jurisdiction there, and that, number two, it is merely a procedural issue such as akin to a resident defendant removing. It's no different than that procedural issue. And the second part of that analysis is, well, at what point in time must that be raised? Because it's true that you can get a case remanded to state court based on a procedural issue even if the state court would have subject matter jurisdiction. The answer to that question, Your Honors, was provided by Congress in 1988. When Grubbs was decided in 1972, a party could move to remand to state court based on any procedural defect at any point in time. But in 1988, Congress amended the remand statute, 28 U.S.C. 1447C, which provides that any defect other than subject matter jurisdiction must be raised within 30 days or it's waived. And in Rodas v. Seidlin, the Seventh Circuit found that an issue with a state court's subject matter jurisdiction  The Fifth Circuit came to the same conclusion in 1991 in Barris v. Sulpicchio Lines, Inc., when they found that Grubbs was, in fact, superseded by the enactment of 1447C and that a party must raise a problem with derivative jurisdiction within 30 days. Here, Ms. Okay, so I think I understand everything you're saying. Just tell me how it works in a case where we just won't think of it as jurisdiction anymore. It's a case like Patton where it's exclusive to the federal courts. You remove within all the time frames. Would you say you can't remove because the state court never had jurisdiction and so it's not removable? Not on subject matter jurisdiction grounds. It's just not removable. Is that your theory? Based on the current state of the law, Your Honor, the That's what the Seventh Circuit would say. I believe the Seventh Circuit and the Fifth Circuit would say that if you raise that issue within the first 30 days after removal, then, yes, that is an issue that would require the case to be Dismissed. Dismissed. Dismissed or remanded for the state court to dismiss for lack of subject matter jurisdiction. So the derivative something still stands. Okay, I got it. Correct. It still stands, but the point in time in which it must be raised has been greatly shortened by the enactment of 1447C. And here Ms. Gilbert waited 11 months after this case was removed to federal court. She was completely fine with this case being tried. They're both the affirmative. What are you accomplishing with this argument? I mean, you can just now file in federal court, right? Because if it's dismissed on those grounds, it would be without prejudice. Your Honor, in a normal case, you are correct. It's not subject matter jurisdiction. Why object? Your Honor, this case is a bit different in its procedural posture than a normal case that would be dismissed without prejudice. Because this case originated in Tennessee General Sessions Court, which is a small claims court. The state law that we would have to turn back to. Is your punchline going to be dismissed with prejudice? It's not a dismissal with prejudice, but Tennessee law would provide that the initial judgment of the General Sessions Court, which keeps Ms. Gilbert in the home, would stand, would stand affirmed. And therefore, we would be left essentially with inconsistent judgments in this case. If this court was to affirm the grant of summary judgment, yet find that the federal court lacked subject matter jurisdiction over the affirmative claims, Ms. Gilbert would be left with a judgment from a court that is not even a court of record in Tennessee. There's no formalities in that court whatsoever. And then we would have a decision on Ms. Gilbert's counterclaims and third-party claims, which extensively litigated the propriety of the foreclosure sale and the loan modification process. The more you talk, the worse it gets. Do you have an answer to this? Or are you just going to tell us all these problems? Well, I'm saying that the— That's why it's not subject matter jurisdiction. Exactly. That is why it is not subject matter jurisdiction. The federal court undisputedly had subject matter jurisdiction in this case when it entered judgment under Freddie Mac's charter. And that judgment can stand because Ms. Gilbert didn't object to any issue with state court jurisdiction within 30 days. And we would contend that the judgment can stand. Thank you, Your Honors. Thank you. I would just like to suggest that the appropriate remedy here is to send this case back for trial by jury and allow Ms. Gilbert her day in court, which she has been deprived of. The facts are sufficient to go to a jury, and I believe she deserves that chance. Thank you. Thank you. Thank you both for your—or all three of you for your argument. The case will be submitted. Would the clerk call the next case, please?